IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KATHY PALO, as Administratrix  §
of the Estate of Frank Nelson  §
Palo, Jr.,  §
 §
             Plaintiff,  §
 § Civil Action No. 3:05-CV-0527-D
VS.  §
 §
DALLAS COUNTY, AND LUPE  §
VALDEZ, in her Official  §
Capacity as Sheriff of  §
Dallas County, Texas,  §
 §
          Defendants.  §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Kathy Palo ("Palo") and
intervenor-plaintiff Chree Palo ("Chree")[1] to recover under 42
U.S.C. § 1983 and Texas law arising from the death of Frank Nelson
Palo, Jr. ("Frank") while he was in custody as a pretrial detainee
in the Dallas County Jail, defendants move for summary judgment.
For the reasons that follow, the court grants the motion in part
and denies it in part, concluding, *inter alia*, that Palo and Chree
are entitled to a trial of their conditions of confinement claim
based on the Fourteenth Amendment Due Process Clause.

I

In 2004 Frank, who suffered from hypertensive cardiovascular
disease, was booked into the Dallas County Jail pending charges of

---

[1]Chree, who is Frank's widow, obtained leave of court on May
8, 2006 to intervene under Fed. R. Civ. P. 24 as a plaintiff.

driving while license suspended and failure to leave identification.[2]  On intake he was interviewed and examined by a University of Texas Medical Branch at Galveston ("UTMB") nurse. Dallas County had contracted with UTMB through the UTMB Interlocal Contract to provide medical services to Jail inmates.  During the intake evaluation, Frank informed the nurse that he had a medical history of Crohn's disease, congestive heart disease, and congestive heart failure and that he had taken Lasix, a diuretic medication, approximately three days before his admission to the Jail.  The only medication recorded on the Central Intake Evaluation Form was Lasix.  The nurse examined Frank and took his vital signs, all of which were within normal limits.  After the nurse determined that Frank did not have any health problems that required immediate attention, he was referred to a UTMB physician to schedule an appointment for further evaluation of his medical condition and was assigned to a general population tank.

During his detention, Frank telephoned Palo to tell her he was not getting the medicine he needed.  He was crying, and he related to Palo that he was scared.  Palo in turn telephoned Dallas County Jail personnel several times to ask whether Frank had been given

_____

[2]The court recounts the evidence in a light favorable to Palo as the summary judgment nonmovant and draws all reasonable inferences in her favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).  As noted *infra*, Chree has not responded to defendants' motion.

- 2 -

his medication.  She spoke to two sergeants and the Jail Chaplain, but she was not permitted to speak to a member of the medical staff during any of her calls.

Five days after Frank's initial intake, detention officers found him lying on his bunk in an unresponsive or unconscious condition.  Electrodes were immediately placed, and one member of the nursing staff performed chest compressions while another ventilated Frank with an Ambu bag.  This continued until paramedics arrived.  Immediately thereafter, Frank was transported by ambulance to a local hospital, where he was pronounced dead by a member of the medical staff.  An autopsy revealed that he had died as a result of hypertensive heart disease and that the manner of his death was "Natural."  Frank was age 51 on the day he died.

Palo, as administratrix of Palo's estate, filed this suit under § 1983 and Texas law.  She alleges that Dallas County and Dallas County Sheriff Lupe Valdez ("Sheriff Valdez"), in her official capacity,[3] failed to provide Palo with immediate, timely, and adequate medical care during his confinement in the Dallas County Jail.  Palo also asserts that this failure deprived Frank of his rights and privileges under the Fifth, Eighth, and Fourteenth

---

[3]During the period when Frank was detained in the Dallas County Jail and on the date he died, Sheriff Valdez was not yet the Sheriff of Dallas County.  This distinction is immaterial because the § 1983 action against Sheriff Valdez in her official capacity is, in effect, a claim against Dallas County.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  The court dismisses the action against Sheriff Valdez *infra* at § V.

Amendments and other unspecified federal laws. She seeks to recover under §§ 1983 and 1988[4] and also asserts pendent Texas-law claims. Chree obtained leave to intervene as a plaintiff. Her complaint is based on the same factual and legal grounds as is Palo's. Defendants move for summary judgment. Palo opposes the motion, but Chree has not responded to it. Because Chree has not, except where the context otherwise requires, the court will refer throughout this memorandum opinion and order to Palo as if she were the sole plaintiff.

II

A

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n.2 (5th Cir. 1999)(citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris County Flood Control Dist.*,

---

[4]42 U.S.C. § 1988(a) and (b) provide for attorney's fees and expert witness fees for the prevailing party in a § 1983 suit. The court will not discuss separately Palo's request for relief under § 1988.

- 4 -

869 F.2d 1565, 1573 (5th Cir. 1989)).  Palo bases her § 1983 claim
on allegations that the unconstitutional conduct of Dallas County
and Sheriff Valdez deprived Frank of due process under the Fifth
and Fourteenth Amendments, and that this conduct constituted cruel
and unusual punishment prohibited by the Eighth Amendment.

Although the state has an important interest in the
incarceration of pretrial detainees and convicted state prisoners,

> [t]he State's exercise of its power to hold
> detainees and prisoners . . . brings with it a
> responsibility under the U.S. Constitution to
> tend to the essentials of their well-being:
> "when the State by affirmative exercise of its
> powers so restrains an individual's liberty
> that it renders him unable to care for
> himself, and at the same time fails to provide
> for his basic human needs . . . it
> transgresses the substantive limits on state
> action set by the Eighth Amendment and the Due
> Process Clause."

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)
(en banc) (quoting *DeShaney v. Winnebago County Dep't of Soc.
Servs.*, 489 U.S. 189, 200 (1989)).  A pretrial detainee's
constitutional rights, however, do not flow from the Eighth
Amendment; they stem from "both the procedural and substantive due
process guarantees of the Fourteenth Amendment." *Id.* (citing *Bell
v. Wolfish*, 441 U.S. 520, 535 (1979)).  Under the Fourteenth
Amendment Due Process Clause, confinement of a pretrial detainee
may not be punitive, because for pretrial detainees, there has not
yet been an adjudication of guilt. *See Bell*, 441 U.S. at 535-36.
Because Palo was a pretrial detainee, the inquiry in this case

- 5 -

focuses on whether defendants' actions amounted to a violation of his Fourteenth Amendment due process rights.

B

To determine the appropriate standard to apply in analyzing constitutional challenges under § 1983 by pretrial detainees, the Fifth Circuit has directed courts first to classify the challenge as an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (citing *Hare*, 74 F.3d at 644). In a condition of confinement case, the constitutional attack is on the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644. In this type of case, the jail officials' state of mind is not disputed because "an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction." *Id.* Thus the inquiry in a condition of confinement case begins with the presumption that intent exists and applies the test articulated in *Bell*, upholding the condition or restriction if it is reasonably related to a legitimate governmental objective. *Id.* at 644-45; *Bell*, 441 U.S. at 539.

By contrast, in a episodic act or omission case, the complained-of harm is a particular act or omission of one or more officials, and the case focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons

- 6 -

in his charge." *Hare*, 74 F.3d at 645; *Johnson v. Johnson County*, 2006 WL 1722570, at *3 (N.D. Tex. June 21) (Fitzwater, J.), *appeal dism'd*, No. 06-10762 (5th Cir. Oct. 13, 2006).

> In an episodic act or omission case, an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission.

*Id.* If the act or omission in question "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice," or if the act or omission was "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials," then the court can presume intent and apply the *Bell* test articulated above in determining liability. *Hare*, 74 F.3d at 645. Otherwise, the party challenging the act or omission will be required to show that the official's action constituted "deliberate indifference." *Id.*; *see also id.* at 647-48 ("We hold that the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs."). Palo maintains that she is asserting both a "condition of confinement" claim and an "episodic act or omission" claim.

III

Defendants move for summary judgment dismissing Palo's claim based on an episodic act or omission, contending that she cannot establish deliberate indifference of County officials to Frank's serious medical needs and cannot demonstrate that there was a Dallas County policy of deliberate indifference to those needs.

A

A party alleging that an episodic act or omission resulted in an unconstitutional violation of a pretrial detainee's Fourteenth Amendment rights is required to show that the official's action constituted "deliberate indifference." *Id.* Unlike a condition of confinement case, intent is not presumed. *Id.* at 645. Once Palo establishes the "deliberate indifference" of the officials, she must then show that "the violation resulted from a County policy or custom adopted or maintained with objective deliberate indifference." *Johnson*, 2006 WL 1722570, at *4; *see Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) ("To succeed in holding a municipality liable, the plaintiff must demonstrate a municipal employee's subjective indifference and additionally that the municipal employee's act 'resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the [plaintiff]'s constitutional rights.'" (citing *Hare*, 74 F.3d at 649 n.14)).

B

Defendants maintain they are entitled to summary judgment because Palo has introduced no evidence of deliberate indifference of County officials to the serious medical needs of Frank and no evidence of a County policy of deliberate indifference to those needs.

Because defendants will not have the burden of proof at trial, they can meet their summary judgment obligation by pointing the court to the absence of evidence supporting Palo's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once they do so, Palo must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324. An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Palo. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this case, Palo must adduce evidence that would permit a reasonable jury to find that a Dallas County official violated Palo's clearly established constitutional rights with subjective deliberate indifference, and that the violation resulted from a County policy or custom adopted or maintained with objective deliberate indifference. *Id.* Otherwise, summary judgment must be granted for defendants. See *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994) (per curiam).

As noted, Chree has not responded to defendants' motion. Although her failure to respond does not permit the court to enter

a "default" summary judgment, it does allow the court to accept defendants' evidence as undisputed. *Tutton v. Garland Indep. Sch. Dist.*, 733 F.Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). Additionally, because defendants have pointed to the absence of evidence to support plaintiffs' episodic act or omission claim, Chree is obligated to produce evidence that creates a genuine issue of material fact. "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Because Chree is relegated to her unsworn pleadings, which are not summary judgment evidence, she has failed to adduce proof that is sufficient to create a genuine issue of material fact in support of her claim based on an episodic act or omission.

C

> Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur.

*Thompson v. Upshur County, Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001) (citing *Hare*, 74 F.3d at 643, 649-50). "[D]eliberate indifference cannot be inferred merely from a negligent or even a

grossly negligent response to a substantial risk of serious harm."
*Id.* (citing *Hare*, 74 F.3d at 645, 649).   Rather, "[d]eliberate
indifference is an extremely high standard to meet" and requires a
showing that "the officials 'refused to treat [the prisoner or
detainee], ignored his complaints, intentionally treated him
incorrectly, or engaged in any similar conduct that would clearly
evince a wanton disregard for any serious medical needs.'" *Domino
v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.
2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.
1985)).

Palo summarily contends that because Frank informed the intake
officer and nurse that he had congestive heart disease and
congestive heart failure for which he was taking daily medication,
Palo told two Jail sergeants and the Chaplain that Frank was not
receiving proper medical care or his medication, and Frank
subsequently died from heart failure, these facts are sufficient to
establish deliberate indifference on the part of the Jail
officials.   But to overcome defendants' summary judgment motion,
Palo must adduce evidence that is sufficient to permit a reasonable
jury to find, *inter alia*, that the officials who allegedly were
deliberately indifferent (1) were aware of facts from which an
inference of substantial risk of serious harm could be drawn, and
(2) actually drew that inference.   *Thompson*, 245 F.3d at 458-59.
Palo has not produced evidence that would permit a reasonable jury

to find that any Jail official with responsibilities over the general population tank knew about Frank's heart condition or his need for medication.

The summary judgment evidence would only permit a reasonable jury to make the following findings.  When Frank was admitted to the Dallas County Jail, a UTMB central intake nurse interviewed and examined him.  Frank informed the nurse that he had congestive heart disease and congestive heart failure and had taken Lasix approximately three days before.  After determining that Palo's vital signs were all within normal limits and that he did not have any health problems that required immediate attention, he was referred to a UTMB physician to schedule an appointment for a further evaluation of his medical condition and was assigned to a general population tank.  There is no evidence that the nurse or an intake officer informed the general population staff that Frank had a heart condition or that he required medication.  Nor is there evidence that this failure to provide such information was a deliberately indifferent act.

Palo complains that, while Frank was housed in the general population tank, he requested and was denied his medication.[5]  It

_____

[5]Palo alleges in her response that she and Frank notified defendants that Frank required medication due to congestive heart failure.  P. Resp. 4.  She also asserts that defendants' employees, agents, and representatives were notified that Frank required medical attention and failed to provide him with needed medications *id.*, that she and Frank repeatedly communicated with Jail security and medical services personnel, putting them on notice of Frank's

is this conduct——the alleged denial of medication——that Palo
alleges to be deliberately indifferent.[6]  But Palo has adduced no
evidence that any particular Jail official responsible for
detainees housed in the general population tank was aware of
Frank's heart condition or of facts from which to draw the
inference that Frank was at a substantial risk of serious harm

---

medical needs, and that defendants knew of his condition, *id.* at 8.
Palo does not cite any summary judgment evidence in support of
these assertions.  This court is not required to "comb the record"
in search of a genuine issue of material fact.  "Rule 56 does not
impose a duty on the district court to sift through the record in
search of evidence to support a party's opposition to summary
judgment." *Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 463 (5th Cir.
1996) (citing *Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334,
1338 (5th Cir. 1996)).  "Rule 56, therefore, saddles the non-movant
with the duty to 'designate' the specific facts in the record that
create genuine issues precluding summary judgment, and does not
impose upon the district court a duty to survey the entire record
in search of evidence to support a non-movant's opposition." *Jones,*
82 F.3d at 1338.  Moreover, under N.D. Tex. Civ. R. 56.5(c), "[a]
party whose . . . response is accompanied by an appendix must
include in its brief citations to each page of the appendix that
supports each assertion that the party makes concerning the summary
judgment evidence."  The court need not, therefore, credit these
assertions, except to the extent that Palo has cited evidence that
Frank advised the intake nurse of his condition and that he had
taken Lasix, that Palo telephoned the Jail, was permitted to speak
to two sergeants and the Chaplain (but not to medical personnel),
and that she told them Frank was not receiving proper medical care
or his medication.

[6]In her response, Palo also asserts that defendants treated
Frank with indifference by failing to implement policies and
procedures to ensure continuity and quality of care that he needed
while under their care, custody, and control.  This does not appear
to refer to an alleged episodic failure to provide reasonable
medical care; instead, it appears to assert a condition of
confinement claim.

without medication.[7]  Palo has adduced no evidence that Frank told
a general population tank Jail official that he had a history of
heart disease or failure or that a particular Jail official denied
his request for his medication.   Even if the hearsay that Palo
offers——Frank's alleged statement that he was not receiving his
medication for his heart——is admissible,[8] it would not permit a
reasonable jury to find that Frank requested his medication from a
particular Jail official with responsibilities over the general
population tank.   Nor would it permit the finding that the Jail
official was aware of facts from which an inference of substantial
risk of serious harm could be drawn, i.e., that without his
medication Frank faced such a substantial risk, or that the Jail
official actually drew that inference.

Furthermore, even if Palo could establish that a particular
Jail official was aware of facts from which to draw an inference of
substantial risk of serious harm, she has not produced any evidence
that would permit a reasonable jury to find that the Jail official
subjectively intended that harm occur.   Under *Thompson*, proof of

---

[7]Palo asserts that the degree of indifference reflected in the
failure to administer medications to Frank for a five-day period is
troublesome.   P. Resp. 8.   But if Jail officials were unaware that
he needed medication, this evidence would not reasonably permit the
finding that Jail officials were indifferent.

[8]Defendants filed objections on August 1, 2006 to certain of
Palo's exhibits, and they challenge specifically her statement that
"Frank was crying and stated that he was not receiving medication
for his heart," contending it is hearsay.

deliberate indifference requires as the third element that the official's response indicate that the official subjectively intended that harm occur. *Thompson*, 245 F.3d at 459. Palo devotes no part of her response brief to the subjective intent of any Jail official.

In sum, Palo has adduced no evidence from which a reasonable jury could find that a particular Jail official denied Frank his medication, assuming he requested it, while he was in the general population tank. Nor has she produced evidence that would permit a reasonable jury to find that a particular Jail official working in the general population tank knew facts from which an inference could be drawn that Frank faced a substantial risk of serious harm or that the official actually drew that inference. Finally, Palo points to no evidence that would enable a reasonable jury to find that a specific Jail official subjectively intended that Frank suffer harm. Palo has therefore failed to demonstrate a basis on which a reasonable jury could find defendants liable based on "deliberate indifference."

D

Because a reasonable jury could not find that Palo has proved an episodic act or omission claim, the court need not consider whether she has adduced sufficient evidence for a reasonable jury to find that the violation resulted from a County policy or custom adopted or maintained with objective deliberate indifference.

- 15 -

IV

The court now addresses whether Palo can recover under § 1983 on a Fourteenth Amendment-based condition of confinement claim.

In a § 1983 condition of confinement claim, the pretrial detainee attacks the general conditions, practices, rules, or restrictions of pretrial confinement, and courts apply the test that the Supreme Court announced in *Bell v. Wolfish.* *See Hare*, 74 F.3d at 644.  The *Bell* test is designed to "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Bell*, 441 U.S. at 538.  Under *Bell* the court asks whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539.  If the condition or restriction is related to a legitimate governmental objective, it does not amount to unconstitutional "punishment." *Id.*  "Conversely, if a restriction or condition is not reasonably related to a legitimate goal . . . a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.*  "Pretrial detainees are entitled to reasonable medical care, 'unless the failure to supply it is reasonably related to a legitimate governmental objective.'" *Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992) (citing *Cupit v. Jones*, 835 F.2d 82, 85 (5th Cir. 1987)).

Reading Palo's response and brief together, it appears that her condition of confinement claim is based on alleged inadequate, inhumane, and extensive conditions that prevented detainees from receiving consistent and adequate care; inadequate funding and monitoring of the UTMB Interlocal Agreement; inadequate staffing and lack of compliance with the standards set forth in the Agreement; failure to properly train security personnel in managing inmates' medical needs; ineffective communication between UTMB medical personnel and Jail security/operation personnel; a failure to achieve coordinated seamless delivery between medical and security operations; allowing intake security officers to perform initial medical and mental health screening of inmates; an inadequate policy regarding medication administration and continuity of medical care; a policy of not meeting required staffing numbers in the Jail; and a policy, practice, and/or procedure of not providing any training on the identification and care for inmates with preexisting medical conditions that required continuous medical attention and needs.

Defendants do not move for summary judgment with respect to a conditions of confinement claim. Fairly read, their motion and brief address only an episodic act or omission claim. *See, e.g.,* Ds. Mot. 1-2; Ds. Br. 2-3 (arguing that Palo cannot establish deliberate indifference). Although defendants challenge Palo's ability to establish that the County had a policy of deliberate

indifference to Frank's serious medical needs, because in a
conditions of confinement case the court presumes intent, *see Hare*,
74 F.3d at 644, this argument is necessarily addressed to Palo's
episodic act or omission claim.   And while Palo's complaint can
perhaps be construed as not alleging a claim based on conditions of
confinement——which may explain why defendants did not address it in
their motion——defendants do not argue in their reply brief that
Palo failed to plead such a claim.   They simply ignore the
conditions of confinement claim and address the episodic act or
omission claim.

Because defendants do not adequately address Palo's condition
of confinement claim in their motion, it would be error to grant
summary judgment on a ground not raised. *See, e.g., John Deere Co.
v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987).
Nor can the court grant summary judgment against Chree based on
this claim, despite her failure to respond. *See John v. State of
La. (Bd. of Trustees for State Colls. & Univs.*, 757 F.2d 698, 708
(5th Cir. 1985) (holding that Rule 56 contemplates shifting burden,
nonmovant is under no obligation to respond unless movant
discharges initial burden, and if moving party fails to discharge
this burden, summary judgment must be denied, even if nonmoving
party has not responded to motion).

Accordingly, the court denies defendants' motion to the extent
Palo and Chree seek to recover under § 1983 for a Fourteenth

- 18 -

Amendment violation based on a condition of confinement.

V

Defendants move to dismiss Palo's action against Sheriff Valdez in her official capacity on the ground that it is duplicative of her action against the County.  The court agrees, and it dismisses the actions of Palo and Chree against Sheriff Valdez in her official capacity.

A suit against a government official in her official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).  If the government entity receives notice and an opportunity to respond, an "official-capacity suit" is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  A suit against a municipal official in her official capacity is not a suit against the official personally, because the real party in interest is the entity.  *Id*. at 166.  Thus there is no longer any need to bring official-capacity actions.  Accordingly, the court dismisses the actions of Palo and Chree against Sheriff Valdez in her official capacity.

VI

Defendants maintain that Palo lacks standing to seek prospective injunctive relief against them because her request for such relief is moot in light of Frank's death.  Alternatively, they

- 19 -

argue that Palo cannot obtain preliminary injunctive relief on the merits.

Although defendants frame their arguments in terms of standing, they essentially contend that Palo's request for prospective injunctive relief should be dismissed as moot. While the doctrines are related, standing and mootness are separate inquiries. *See, e.g., Bowman v. Corrs. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003). Because defendants' arguments for dismissal of Palo's request for injunctive relief focus on mootness, the court will address that issue first.

The court holds that Frank's death renders moot at least part of Palo's request for injunctive relief. To satisfy the "case or controversy" requirement of Article III, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) (quotation marks and citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). Courts therefore hold, for example, that when a prisoner challenges prison conditions after he is released from confinement, his claim for

injunctive relief is moot, and the prisoner can no longer challenge the prison conditions unless he can point to a concrete and continuing injury. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole––some 'collateral consequence' of the conviction–-must exist if the suit is to be maintained."); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (dismissing as moot prisoners' claim for injunctive relief concerning conditions of confinement when prisoners were no longer confined in challenged facility). Similarly, the death of a prisoner renders a claim for prospective injunctive relief against the prison conditions moot. *See Bowman*, 350 F.3d at 550 ("Given the fact that [the prisoner] is dead, any claim for injunctive relief is moot . . . ."). Although there may be rare instances where a court holds that a case involving a deceased prisoner is not moot, either because it is a class action or because it is "capable of repetition yet evading review," *Kremens v. Bartley*, 431 U.S. 119, 133 (1977); *Riverside v. McLaughlin*, 500 U.S. 44 (1991), Palo has presented no evidence that Frank's case fits into one of these categories. Even if Palo establishes at trial that she is entitled to recover damages as administratrix of Frank's Estate, her request for prospective injunctive relief related to Frank is moot in light of his death.

Palo also requests that the court enter an injunction ordering

the County "to reform the policies, customs and practices governing and relating to the medical services provided to detainees in the Dallas County Jail System." Compl. 10. This request may not be moot because it relates to other detainees, not Frank. But Palo does not argue, and she makes no attempt to show, that she has standing to assert claims on behalf of other detainees. And absent any indication that she is herself a detainee or is acting in some capacity that would give her standing to sue on behalf of Dallas County Jail detainees, it is clear she lacks standing.

Accordingly, the court does not reach the merits of Palo's request for prospective injunctive relief, and it dismisses the request in part as moot and in part for lack of standing.

VII

Defendants maintain that Palo's pendent state-law claims should be dismissed without prejudice once her federal-law claims are dismissed. Alternatively, they argue that the court should grant the motion for summary judgment on the merits, contending the state-law claims are barred by sovereign immunity.

Because the court is not dismissing Palo's § 1983 claim in its entirety, it will reach the merits of defendants' motion. Palo sues defendants under Texas state law for intentional infliction of emotional distress and failure to provide medical care. Defendants argue that neither claim falls within an exception to sovereign immunity. Palo has made no attempt in her summary judgment

response brief to address this argument.  Chree has not responded to the motion.  The court therefore concludes that their state-law claims are barred by sovereign immunity, and they are dismissed with prejudice.

*     *     *

For the reasons set out, the court grants in part and denies in part defendants' June 27, 2006 motion for summary judgment. Palo's and Chree's actions against Sheriff Valdez in her official capacity are dismissed with prejudice.

**SO ORDERED.**

December 15, 2006.

                                    _____
                                    SIDNEY A. FITZWATER
                                    UNITED STATES DISTRICT JUDGE