IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KATHY PALO, as Administratrix  §
of the Estate of Frank Nelson  §
Palo, Jr.,  §
 §
             Plaintiff,  §
 §   Civil Action No. 3:05-CV-0527-D
VS.  §
 §
DALLAS COUNTY, AND LUPE  §
VALDEZ, in her Official  §
Capacity as Sheriff of  §
Dallas County, Texas,  §
 §
        Defendants.  §

MEMORANDUM OPINION
AND ORDER

In this civil rights action arising from the death of a pretrial detainee, the question presented by defendant's summary judgment motion is whether a reasonable jury could find the defendant liable under 42 U.S.C. § 1983 on a Fourteenth Amendment-based conditions of confinement claim. Concluding that the plaintiff who has responded to defendant's motion has raised genuine issues of material fact, but that the plaintiff-intervenor who has not responded has not raised fact issues that preclude summary judgment, the court grants the motion in part and denies it in part.

I

The relevant background facts of this case are set out in the court's opinion granting in part and denying in part a prior motion for summary judgment filed by defendants Dallas County and Dallas

County Sheriff Lupe Valdez ("Sheriff Valdez").  *See Palo ex rel. Estate of Palo v. Dallas County*, 2006 WL 3702655, at *1 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) ("*Palo I*").[1]  The court therefore recounts them only briefly, adding subsequent procedural history that necessarily was not set out in the prior opinion.

Frank Nelson Palo, Jr. ("Frank"), a pretrial detainee, died while in the custody of the Dallas County Jail.  Plaintiff Kathy Palo ("Palo"), as administratrix of Frank's estate, and intervenor-plaintiff Chree Palo ("Chree"), Frank's surviving widow, sued Dallas County under 42 U.S.C. § 1983, alleging that it deprived Frank of his Fourteenth Amendment due process rights when it failed to provide him with proper medical treatment.[2]

In *Palo I* the court addressed a summary judgment motion filed by Dallas County and Sheriff Valdez.  It granted the motion in part and denied it in part.  *See Palo I*, 2006 WL 3702655, at *9.  The court denied the motion to the extent plaintiffs sought to recover under § 1983 for a Fourteenth Amendment violation based on a

---

[1]Plaintiffs named Sheriff Valdez as a defendant in her capacity as Sheriff of Dallas County.  In *Palo I* the court dismissed the claims against Sheriff Valdez on the ground that they were duplicative of the claims against the County.  *Palo I*, 2006 WL 3702655, at *8.

[2]The court recounts the evidence in a light favorable to Palo as the summary judgment nonmovant and draws all reasonable inferences in her favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).  As noted *infra*, Chree has not responded to Dallas County's motion.

condition of confinement, because defendants did not adequately address the claim in their motion. *Id.* at *7.

Dallas County later obtained court approval to file a supplemental motion for summary judgment that addresses this cause of action.  It maintains that plaintiffs have failed to plead sufficient facts to support such a claim.  And it contends there is no evidence that the conditions of confinement that existed while Frank was detained in the Jail deprived him of reasonable and adequate medical care or otherwise caused his death.  Dallas County therefore posits that plaintiffs have failed to establish a viable due process claim based on the conditions of confinement.

Palo opposes the motion, but Chree has not filed a response. Because Chree has not, except where the context otherwise requires, the court will refer throughout this memorandum opinion and order to Palo as if she were the sole plaintiff.

II

Although the state has an important interest in the incarceration of pretrial detainees and convicted state prisoners,

> [t]he State's exercise of its power to hold detainees and prisoners . . . brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs . . . it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

- 3 -

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638-39 (5th Cir. 1996) (en banc) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).   A pretrial detainee's constitutional rights stem from "both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* at 639 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Under the Fourteenth Amendment Due Process Clause, confinement of a pretrial detainee may not be punitive, because for pretrial detainees, there has not yet been an adjudication of guilt. *See Bell*, 441 U.S. at 535.   Because Palo was a pretrial detainee, the inquiry in this case focuses on whether Dallas County's actions amounted to a violation of his Fourteenth Amendment due process rights.

To determine the appropriate standard to apply in analyzing constitutional challenges brought by pretrial detainees under § 1983, the Fifth Circuit has directed courts first to classify the challenge as an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (citing *Hare*, 74 F.3d at 644). In a condition of confinement case, the constitutional challenge is to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644.   By contrast, in an "episodic act or omission" case, the complained-of harm is a particular act or omission of one or more officials, and the case

focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645; *Johnson v. Johnson County*, 2006 WL 1722570, at *3 (N.D. Tex. June 21) (Fitzwater, J.), *appeal dism'd*, No. 06-10762 (5th Cir. Oct. 13, 2006). A party alleging that an "episodic act or omission" resulted in an unconstitutional violation of a pretrial detainee's Fourteenth Amendment rights is required to show that the official's action constituted "deliberate indifference." *Hare*, 74 F.3d at 647-48.

Both Dallas County and Palo appear to argue that in evaluating Palo's conditions of confinement claim, the court must apply the "deliberate indifference" standard articulated in *Hare*. These arguments, however, ignore the Fifth Circuit's clear instructions in *Hare*, where it explained that

> the *Bell* test retains vitality only when a pretrial detainee attacks general conditions, practices, rules, or restrictions of pretrial confinement. When, by contrast, a pretrial detainee's claim is based on a jail official's episodic acts or omissions, the *Bell* test is inapplicable and hence the proper inquiry is whether the official had a culpable state of mind in acting or failing to act.

*Id.* at 643; *see also Grabowski v. Jackson County Pub. Defenders Office*, 47 F.3d 1386, 1398 (5th Cir. 1995) ("[I]n all conditions of confinement actions, medically related or otherwise, it is not necessary for a pretrial detainee to establish that the official involved acted with 'deliberate indifference in order to establish

- 5 -

a due process violation.").

In a § 1983 condition of confinement case, the pretrial detainee attacks the general conditions, practices, rules, or restrictions of pretrial confinement, and courts apply the test that the Supreme Court announced in *Bell*. *See Hare*, 74 F.3d at 644. The *Bell* test is designed to "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Bell*, 441 U.S. at 538. It requires a court to decide whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* (citing cases).

To determine whether the condition is an unconstitutional punishment, the court asks whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. If it is, the condition or restriction does not amount to unconstitutional "punishment." *Id.* "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.*

This court has already granted summary judgment dismissing Palo's episodic act or omission claim. *Palo I*, 2006 WL 3702655, at

- 6 -

*6.  In deciding the present summary judgment motion, it considers only the sufficiency of the pleadings and evidence to support Palo's conditions of confinement claim.  Thus any evidence or arguments that Palo has tendered in support of a finding of "deliberate indifference" are inapposite, because the test articulated in *Bell* assumes "intent" and therefore does not require a showing of "deliberate indifference."  *See Hare*, 74 F.3d at 644-45.

Dallas County contends that it is entitled to summary judgment because Palo has not adequately pleaded a jail conditions case and, even if she has, she has not established such a claim arising from the conditions of Frank's confinement.

III

The court turns first to Dallas County's contention that Palo has failed adequately to plead a conditions of confinement claim.

A

Fed. R. Civ. P. 8(a) provides that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The essential function of notice pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).  A pretrial detainee can allege a § 1983 claim for a

- 7 -

Fourteenth Amendment due process violation arising from the conditions of confinement by pleading facts that support the finding that he was subjected to jail conditions that were not reasonably related to a legitimate governmental objective. *See Bell*, 441 U.S. at 539.

B

The court concludes that Palo has pleaded a conditions of confinement claim.[3]  A significant component of Palo's complaint focuses on the acts or omissions of the nurses and officers at the Jail.  Dallas County argues in its summary judgment motion that "the instant case does not fit well within the conditions of confinement category, and in fact, bears a closer resemblance to cases involving episodic acts of detention officials." D. Br. 4. Dallas County is correct that, to the extent Palo challenges the individual acts of the Jail officials and staff, these allegations should properly be characterized as asserting an episodic act or omission claim.[4]  This follows from the fact that

_____

[3]In *Palo I* the court held that defendants had not moved for summary judgment concerning a conditions of confinement claim. *Palo I*, 2006 WL 3702655, at *7.  In doing so, it stated that, "Palo's complaint [could] perhaps be construed as not alleging a claim based on conditions of confinement—which may explain why defendants did not address it in their motion . . . ." *Id.*  Having now considered the question in detail, the court concludes for the reasons explained that Palo *has* pleaded a conditions of confinement claim.

[4]*See, e.g., Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (holding that plaintiff's "complaint turns on [the arresting officers'] alleged failure to take better care of

- 8 -

> [i]n an episodic act or omission case, an
> actor usually is interposed between the
> detainee and the municipality, such that the
> detainee complains first of a particular act
> or omission by the actor, and then points
> derivatively to a policy, custom, or rule (or
> lack thereof) of the municipality that
> permitted or caused the act or omission.

*Stephens v. Dallas County, Tex.*, 2007 WL 34827, at *5 (N.D. Tex.
Jan. 4, 2007) (Kinkeade, J.) (citing *Scott v. Moore*, 114 F.3d 51,
53 (5th Cir. 1997) (en banc)).

The distinction between an episodic act or omission case and
a conditions of confinement case is illustrated in *Scott*. There,
the Fifth Circuit concluded that although the plaintiff had
generally complained of jail conditions that permitted an officer
on duty to sexually assault her, "the actual *harm* of which she
complains is the sexual assaults committed by [the defendant]
during the one eight-hour shift—an episodic event perpetrated by
an actor interposed between Scott and the city, but allegedly
caused or permitted by the aforesaid general conditions." *Scott*,
114 F.3d at 53. The panel held that because "Scott did not suffer
from the mere existence of the alleged inadequate staffing, but

---

her and Bertrand's [the jail clinic assistant on duty the night of
plaintiff's arrest] failure to medically screen her and secure her
to treatment. Such a complaint perfectly fits the definition of
the episodic omission."); *Stephens v. Dallas County, Tex.*, 2007 WL
34827, at * 6 (N.D. Tex. Jan. 4, 2007) (Kinkeade, J.) (classifying
case as "one involving episodic acts or omissions" when complaint
alleged that pretrial detainee "did not receive his required
prescription medications for several days while detained in the
jail.").

only from Moore's specific sexual assaults committed on but one
occasion," the claim was properly treated as an act or omission
claim and analyzed under the framework articulated in *Hare*. *Id.* at
53-54.

Unlike *Scott*, Palo's complaint does not focus solely on the
acts or omissions of the staff on duty at the Jail.  Rather, she
also attacks the Jail medical care system itself.  In *Scott* the
plaintiff would not have been sexually assaulted had it not been
for the actions of the guard; here, Palo alleges that subjecting
Frank to the inadequate system of medical care caused him to suffer
a deprivation of his constitutional rights.  Accordingly, the
presence *vel non* of the individual actors does not alter the
fundamental nature of the claim.

Palo alleges in her complaint that Dallas County "failed to
implement policies, practices and procedures that respected
[Frank's] constitutional rights to adequate medical care and
treatment, access to the courts, and freedom from punishment as a
detainee." Compl. 2.  She avers that Dallas County deprived Frank
of his constitutional rights by "failing to provide proper medical
treatment, through indifference to his health needs, and through
erroneous procedures." *Id.* at 6.  Palo also asserts that

> Defendants, acting pursuant to official
> policies, practices, and customs, and with
> deliberate, callous, and conscious
> indifference to the constitutional rights of
> [Frank], and all other detainees in the Dallas
> County Jail facilities failed to implement the

- 10 -

>           policies, procedures, and practices necessary
>           to provide constitutionally adequate medical
>           care and services.  The policies, procedures,
>           and practices which have been implemented
>           actually may have interfered with, or
>           prevented [Frank] from receiving adequate and
>           necessary medical care and services.

*Id.* at 7.  Finally, she alleges that Dallas County "failed and refused to implement policies, practices, or procedures, and failed to train their personnel adequately on the appropriate policies, practices, and procedures regarding the treatment of detainees with hypertensive cardiovascular disease," and that Dallas County knew that death or serious injury would in reasonable probability occur as a consequence.  *Id.* at 8.

In her summary judgment opposition brief, Palo contends that "Dallas County's policies and procedures are of a type and nature that precluded confined individuals with a pre-existing medical condition, from receiving adequate and timely medical care."  P. Br. 3-4.  She augments the allegations of her complaint by identifying the "policies, practices and procedures" that she maintains deprived Frank of his constitutional rights.  *Id.* at 13. Palo contends that Frank received unconstitutional treatment due to, *inter alia*, inadequate Jail conditions that allowed serious deficiencies in the form of inadequate (1) intake screening, (2) acute care, (3) chronic care, (4) access to health care, (5) follow-up care, (6) record keeping, (7) medication administration, (8) medical facilities, (9) staffing, training, and supervision,

and (10) quality assurance.[5]  *Id.* at 14.  Palo maintains that these conditions themselves violated Frank's constitutional rights and were the foreseeable product of the long-term inadequate staffing and training in the Jail regarding the provision of medical care, because the conditions prevented confined persons, such as Frank, from receiving consistent and adequate care.  Palo also asserts that these conditions were not reasonably related to any legitimate governmental purpose but were instead the byproduct of Dallas County's inadequate funding and inadequate monitoring of the University of Texas Medical Branch at Galveston ("UTMB") Interlocal Contract.

The individual acts or omissions of prison officials and staff are immaterial to Palo's claim that the jail conditions themselves——specifically, the inadequate system of care in the Jail to which Frank was subjected during his pretrial confinement——violated his constitutional right to be free from punishment while confined as a pretrial detainee.  The court therefore holds that Palo has sufficiently pleaded a conditions of

---

[5]It is correct, of course, to say that although "'the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.'"  *Jacobs v. Tapscott*, 2006 WL 2728827, at *4 n.3 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (quoting *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004)).  The present case, however, is not one in which the plaintiff has failed to plead a claim and has then attempted to assert it for the first time in response to a summary judgment motion.

confinement claim, and it denies Dallas County's motion to the extent it seeks dismissal on this basis.

IV

Dallas County posits that plaintiffs have failed to adduce competent summary judgment evidence that is sufficient to establish any of the alleged inadequate conditions.  It argues that there is no evidence that any of the alleged conditions deprived Frank of reasonable or adequate medical care or otherwise caused his death.  And it maintains that the undisputed evidence establishes that the medical care that Frank received was reasonable, adequate, and consistent with the standard of care in other detention facilities in the state of Texas.

Because Dallas County will not have the burden of proof at trial on plaintiffs' conditions of confinement claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support it.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once it does so, plaintiffs must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  Plaintiffs' failure to produce proof as to any essential element renders all other facts immaterial.  *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).  An issue is genuine if the

evidence is such that a reasonable jury could return a verdict in plaintiffs' favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory if plaintiffs fail to meet their burden. *Little*, 37 F.3d at 1076.

Dallas County objects to Palo's summary judgment proof and argues that she has failed to introduce competent evidence to establish any of the alleged inadequate conditions at the Jail. It does not, however, contend that if the allegedly inadequate conditions of confinement are established, it nevertheless prevails under *Bell* on the basis that the conditions are rationally related to a legitimate government purpose. *See Bell*, 441 U.S. 538-39. Accordingly, to withstand summary judgment, plaintiffs need only adduce evidence that would permit a reasonable jury to find that Frank was subjected to the complained-of conditions while he was confined at the Jail. *See id.*

V

As noted, Chree has not responded to Dallas County's motion. Although Chree's failure to respond does not permit the court to enter a "default" summary judgment, it does allow the court to accept Dallas County's evidence as undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). Additionally, because Dallas County has pointed to the absence of evidence to support Chree's conditions of confinement claim, she is obligated to produce evidence that

creates a genuine issue of material fact. "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Because Chree is restricted to her unsworn pleadings, which are not summary judgment evidence, she has failed to adduce proof that is sufficient to create a genuine issue of material fact in support of her conditions of confinement claim. Accordingly, the court grants Dallas County's motion for summary judgment dismissing Chree's claim.

## VI

The court now considers Palo's opposition to Dallas County's motion. It must first address Dallas County's objections to certain parts of the evidence on which Palo relies.

## A

Palo has introduced various documents to raise a fact issue regarding whether Frank was subjected to inadequate medical conditions while confined at the Jail. Among them are a Report on the Medical and Mental Health Programs of the Dallas County Jail ("HMA Report") prepared by Dr. Michael Puisis ("Dr. Puisis") and submitted by Health Management Associates ("HMA"). She also relies on a report prepared by the Department of Justice ("DOJ") regarding its investigation of the Jail ("DOJ Report"). Dallas County moves

to strike both reports.[6]  Because some of the contents of these reports are material to the court's conclusion that Palo has met her summary judgment burden, the court must as a threshold matter address Dallas County's evidentiary objections to them.

B

Dallas County objects to the HMA and DOJ Reports, contending that they are not relevant because they do not specifically address the medical care that Frank received or pertain to the conditions of his confinement during the period July 5-10, 2004.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 425 (5th Cir. 2006) (citing Fed. R. Evid. 401). The "basic standard of relevance thus is a liberal one," and the trial court has broad discretion in determining whether to permit evidence under Fed. R. Evid. 401. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993); *see also E.E.O.C. v. Manville Sales*

---

[6]Dallas County also moves to strike Exhibit Nos. 1-4, 7, 9, and 11-14 of Palo's evidence appendix.  Because the court concludes, without considering the balance of the challenged evidence, that Palo has met her summary judgment burden, it need not decide any part of Dallas County's motion to strike that is not addressed in this memorandum opinion and order.  In addressing Dallas County's evidence objections, the court has limited its analysis to the evidence that Dallas County has moved to strike and that the court is relying on to hold that Palo has raised a genuine issue of material fact.

*Corp.*, 27 F.3d 1089, 1093 (5th Cir. 1994) ("The standard for relevance is a liberal one.").

Palo challenges the conditions of the Jail during Frank's confinement from July 5-10, 2004. To establish that Frank was subjected to the conditions alleged, Palo submits the DOJ and HMA Reports as proof that inadequate medical conditions were prevalent at the Jail and not limited to the circumstances surrounding Frank's treatment. Without weighing the probative value of these reports, the court concludes that they are relevant because they lend support to Palo's allegations that medical care at the Jail during the period near Frank's detention was systemically inadequate, that the conditions did not improve over time, and that during his confinement, Frank was subjected to these same conditions.

The HMA Report was completed in February 2005 using information Dr. Puisis obtained the previous year. The summary judgment evidence does not demonstrate indubitably that any change in medical care provided to detainees occurred at the Jail between the time of Frank's detention and the time of the HMA study, such that the HMA Report would be rendered irrelevant to Palo's allegations regarding the medical care provided to Frank. Palo bases her conditions of confinement claim on the premise that the Dallas County Jail system suffered from a deeply-rooted systemic deficiency that has persisted, unaddressed, for years. The

existence of these widespread systemic problems only months after
Frank's detention are relevant to the question whether during the
time Frank was detained he was subjected to the conditions of
confinement that serve as the predicate for his Fourteenth
Amendment claim.

The DOJ Report was based on Jail inspections conducted during
the periods February 20-24, 2006 and March 20-23, 2006.  Although
both inspections took place at times considerably later than the
period during which Frank was detained, the DOJ report is relevant
because it tends to show that nearly two years later, the alleged
systemic deficiencies had not been ameliorated.  Merely because the
HMA and DOJ Reports were based on inspections conducted after
Frank's detention does not render the Reports irrelevant to the
question whether the alleged unconstitutional conditions existed at
the Jail.  *Cf., e.g., Manville Sales Corp.*, 27 F.3d at 1094
(holding that long period of time over which remarks were made did
not suggest that evidence was not relevant; long time period might
indicate pattern of discriminatory comments and was directly
relevant to showing existence of discriminatory motive).

C

Dallas County next objects to the HMA and DOJ Reports on the
ground that they are hearsay and that they contain statements that
are hearsay and hearsay within hearsay.  The court overrules the
objections.

- 18 -

The HMA and DOJ Reports are both excluded from the hearsay rule as "public reports." Fed. R. Evid. 803(8) applies to

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . [or] in civil actions and proceedings against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of the information or other circumstances indicate lack of trustworthiness.

The HMA Report was completed as a result of a contract between the Dallas County Commissioners Court and HMA "to perform a comprehensive review of the medical and mental health services at the Dallas County Jail." P. July 18, 2006 App. 105. The DOJ report was made under authority vested in the DOJ to investigate possible federal constitutional violations and to bring suit against a government entity that it found to be in violation of the Constitution. Dallas County does not argue that these reports indicate a lack of trustworthiness. The court therefore concludes that they are admissible under the public reports exception to the hearsay rule.

Dallas County also challenges the Reports on the basis that they contain statements that are hearsay and hearsay within hearsay. Fed. R. Evid. 805 provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the

- 19 -

hearsay rule provided in these rules." Accordingly, to determine whether statements within a public record are admissible, courts examine the statements to determine whether they are hearsay and, if so, whether they fall within an exception to the hearsay rule.

Here, however, Dallas County broadly objects to the Reports on the ground that they contain hearsay within hearsay; it does not specifically identify any part as containing hearsay within hearsay. This court has rejected objections to summary judgment evidence that are too general. *Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *25 (N.D. Tex. Jan. 9) (Fitzwater, J.) ("FedEx has not demonstrated through its very general objections that the underlying writings are not voluminous. . . . And because FedEx does not object more specifically, the court need not address whether other evidence on which it has relied in denying summary judgment is inadmissible hearsay."), *appeal docketed*, No. 07-10555 (5th Cir. May 18, 2007). Dallas County's failure to offer specific objections is a material fallacy, because it may be objecting to parts of the Reports that are not hearsay. It is settled, for example, that conclusions or opinions contained within an investigatory report that is itself admissible under Rule 803 are also admissible under the same Rule. *See, e.g., Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988) ("We hold, therefore, that portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a

- 20 -

conclusion or opinion.  As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report."); *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991) ("Opinions and conclusions, as well as facts, are covered by Rule 803(8)(C)."). Dallas County has not made clear through its objections whether it considers to be hearsay within hearsay the parts of the Reports that are in fact admissible.  And the only parts of the HMA and DOJ reports on which Palo relies are those portions that constitute the conclusions or opinions of Dr. Puisis and the DOJ, respectively.  The court has already determined that the Reports themselves are excluded from the hearsay rule under Rule 803.  The opinions and conclusions contained within the Reports also constitute admissible evidence.  Because Dallas County has failed to point to inadmissible components of the Reports, the court overrules its hearsay objections.

D

Dallas County also objects to the HMA and DOJ Reports on the grounds that they contain conclusory statements and speculation that are not based on personal knowledge, and they contain opinions based on hearsay and other inadmissible information.  It argues that to the extent that any portion of the exhibits may be admissible, Palo has made no attempt to segregate and tender the purported admissible portions from those that are inadmissible,

and, given the volume of the exhibit, this is fatal to introducing the admissible portion in evidence. Dallas County also objects to the HMA and DOJ Reports on the basis that they do not have sufficient or adequate foundation to support them and because they have not been properly authenticated.

The HMA and DOJ Reports both contain findings from investigations of the Jail undertaken pursuant to an official DOJ investigation for the DOJ Report and a Dallas County Commissioners Court contract for the HMA Report. Although the Reports may include opinions, their findings are neither conclusory nor speculative. Furthermore, as explained *supra* at § VI(C), the opinions of Dr. Piusis and the DOJ are contained within public reports and are admissible under Rule 803. Dallas County's argument that the findings are based on inadmissible hearsay is insufficient because, as explained above, it has failed to identify specifically the parts of the Reports that it contends are based on hearsay. Dallas County's objections based on lack of authentication and foundation are also insufficient. Under Fed. R. Evid. 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Palo has met this standard. Finally, even if some defects remain, "the papers of a party opposing summary judgment are usually held to a less

- 22 -

exacting standard than those of the moving party." *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987).

Accordingly, the court denies Dallas County's motion to strike the Reports. It will consider this evidence in deciding whether Palo has adduced sufficient proof to present genuine issues of material fact that require a trial.

VII

A

Palo contends that, since the early 1990s, Dallas County has experienced problems with the delivery of medical care to persons confined in its Jail system. In December 2004, months after Frank's death, Dallas County hired HMA and Dr. Puisis to conduct an independent investigation concerning the provision of medical care in the Jail system. Palo alleges that this independent evaluation was prompted after several years of failed compliance with the UTMB Interlocal Contract and generally accepted jail standards and procedures. Under the UTMB Interlocal Contract, Dallas County subcontracted the provision of medical services to UTMB. Palo alleges that before entering into that contract, Dallas County knew or should have known that UTMB was inexperienced in providing medical services to its Jail population; that although the UTMB Interlocal Contract established minimum staffing standards and needs to guarantee the continuity and seamless administration of

medical services, the manpower was inadequate to meet the needs of the inmates at the Jail, and Dallas County did not follow the standards, despite numerous failed inspections due to unacceptable prisoner/guard ratios; and that Dallas County was aware of UTMB's lack of compliance with the UTMB Interlocal contract, but it failed to take reasonable steps to enforce compliance. She cites the DOJ Report, which found that the Jail "fails to provide inmates with adequate medical care that complies with constitutional requirements," P. Feb. 20, 2007 App. 4, and specifically cited inadequate intake screening, acute care, chronic care, treatment and management of communicable disease, access to health care, follow-up care, record keeping, medication administration, medical facilities, specialty care, staffing, training, and supervision, quality assurance, and dental care, *id.* Palo also alleges that Dallas County's intake screening fails to identify serious inmate medical needs and places inmates at a risk of serious harm, and she cites the DOJ findings that Dallas County's care for inmates with chronic medical conditions fails in the areas of assessment and timely and adequate follow-up medical treatment, including proper medication administration; that there are delays, beginning during the intake process, in the treatment and administration of medication; that inmates who are identified with chronic health conditions are often not scheduled for follow-up medical assessment; and that the process by which inmates are permitted to

- 24 -

request medical care is inadequate and presents a significant barrier to receiving adequate medical care. Palo maintains that there are no protocols for collecting, processing, distributing, logging, and triaging medical requests, and that administration of medicines suffers significant delays, errors, and lapses, all of which are typically caused by inaccurate or inadequate documentation. She relies on the DOJ Report finding that the Jail fails to administer medications in accordance with prescriptions, maintain medication administration records concurrently with distribution, and follow general standards of care to monitor and adjust inmates' prescribed medication regimens. Finally, Palo cites the finding of the DOJ Report that the Jail maintains an insufficient number of medical and custodial staff to provide adequate medical services and fails to engage in consistent, effective quality assurance review to track and trend medical-related incidents at the Jail.

Palo also relies on proof concerning Frank's experience at the Jail. She cites summary judgment evidence that Frank suffered from medical problems, including congestive heart failure and Crohns's disease, and that these conditions were made known to the Jail when Frank became a pre-trial detainee; that Frank informed the nurse that he had congestive heart disease and congestive heart failure and had taken Lasix approximately three days before; that after speaking with Frank, Palo attempted to talk to someone at the Jail

to determine whether Frank was receiving proper medical care;[7]
that she spoke with Sergeant Porter, Sergeant Mitchell, and the
Chaplain, none of whom was able to provide her with any
information; and that Dallas County's own records indicate that a
nurse was present on the floor several times a day, yet Frank was
still unable to get the required medication.[8]

Palo next points to the report of her expert witness, Dr.
James E. Aiken ("Dr. Aiken").[9]  Based on his review of various Jail
documents, Dr. Aiken concluded that they gave "a confused
operational representation of [Frank's] medical status.  There is
no indication that medical services for the facility had
effectively communicated or advised security/operations of any
concerns, precautions or medical limitations regarding [Frank]."

---

[7]Dallas County objects on the basis of hearsay to the part of
Palo's affidavit in which she recounts the statements made by
Frank.  Because the court is not relying on these statements, it
need not decide whether the evidence is admissible.

[8]Dallas County objects to the Activity Sheets for Jail on
7/9/2004 based on a lack of foundation, lack of authentication, and
lack of relevance.  The court overrules the objection based on
relevance because the Activity Sheets are relevant to the question
of coordination between intake services and medical conditions in
the general population tank.  The court also overrules the
objections based on lack of foundation and lack of authentication
because Palo has met the Fed. R. Evid. 901(a) standard.

[9]Dallas County also objects to Dr. Aiken's expert report.  The
court need not address the objection, however, because Palo relies
on Dr. Aiken's report solely to assist in explaining the basis for
her conditions of confinement claim.  She does not rely on any of
Dr. Aiken's statements to establish that certain assertions are
fact.

P. July 18, 2006 App. 157.   Dr. Aiken detailed the problems that can occur when there is a failure of communication between security staff and medical staff, explaining:

> The placement of prisoner population in housing without proper evaluation and coordination between operations/security, medical and other various systems regarding these substantive issues, endanger the well-being and basic protection guarantees of a person incarcerated. . . . The primary origin for this endangerment pertains to the fact that persons confined to a jail cannot decide to have a medical consult similar to a citizen in a community.   An inmate cannot independently decide to enter a hospital, visit a nurse or physician, or even obtain life-sustaining medications without assistance from the confinement operator (Defendants). Confinement staff providing security and operational logistics must intervene prior to the delivery of medical service.   The medical delivery system of the jail must also coordinate and interface with security/operations in a seamless manner to ensure the health-care, safety and well being of the confined population.

*Id.* at 157-58.   Palo also relies on Dr. Aiken's expert report to corroborate her argument that the Jail failed to achieve a "coordinated seamless delivery between medical and security operations."   P. Br. 12.

                                    B

     The court holds that Palo's evidence raises genuine issues of material fact concerning whether the Jail provided inadequate

- 27 -

medical care while Frank was detained there.[10]   Considering the
central intake form, Palo's affidavit, and the HMA and DOJ Reports,
the court concludes that Palo has adduced sufficient evidence to
enable a reasonable jury to find that while Frank was incarcerated,
he was deprived of adequate medical care.   Specifically, a
reasonable jury could find that the medical care provided at the
Jail suffered from various inadequacies, including inadequate
intake screening, follow-up care, medication administration, and
staffing, training, and supervision.   The jury could also
reasonably find, based on the specific records from Frank's
incarceration, that while he was a pretrial detainee, he was
subjected to these inadequate medical conditions.   Dallas County
does not argue that the inadequate medical conditions of which Palo
complains were reasonably related to a legitimate government
purpose.   Therefore, a reasonable jury could find under the *Bell*

---

[10]Dallas County argues that even if there is an evidentiary
basis to support Palo's allegations regarding the inadequate
conditions at the Jail, she has nonetheless failed to demonstrate
how Frank's death was causally related to any alleged inadequacy.
The court disagrees.   For Palo to prevail on her § 1983 claim, she
must establish "(1) a deprivation of a right secured by federal law
(2) that occurred under color of state law, and (3) was caused by
a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th
Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir.
1986)).   To succeed on her claim under § 1983, the injury the
plaintiff (or, in this case, the plaintiff's decedent) suffers is
the constitutional violation itself.   Regardless whether Frank's
*death* was caused by inadequate medical conditions at the Jail, a
jury could still find that his constitutional rights were violated
by the unconstitutional "punishment" inflicted on him through the
inadequate medical conditions at the Jail.

standard that the conditions to which Frank was subjected were not reasonably related to a legitimate government purpose and therefore "punished" Frank, in violation of his Fourteenth Amendment rights. *Bell*, 441 U.S. 538-39.

Accordingly, the court denies Dallas County's motion for summary judgment as to Palo.

\* \* \*

For the reasons set out, Dallas County's January 23, 2007 supplemental motion for summary judgment is granted as to Chree's conditions of confinement claim and denied as to Palo's conditions of confinement claim.  By Rule 54(b) final judgment filed today, the court dismisses Chree's action against Dallas County and Sheriff Valdez.[11]

**SO ORDERED.**

July 26, 2007.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[11]The dismissal as to Sheriff Valdez follows from the court's decision in *Palo I*.  *See Palo I*, 2006 WL 3702655, at *8.

- 29 -